# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

ALEXANDER HENIZE,                    :    Case No. 2:22-cv-1625
                                     :
     Petitioner,             :
                                     :    District Judge Sarah D. Morrison
vs.                                  :    Magistrate Judge Karen L. Litkovitz
                                     :
WARDEN, NOBLE                        :
CORRECTIONAL INSTITUTION,            :
                                     :
     Respondent.             :

## REPORT AND RECOMMENDATION

Petitioner, an inmate in state custody at the Noble Correctional Institution, through counsel,[1] has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Doc. 1). This matter is before the Court on the petition, the return of writ, and petitioner's pro se reply. (Doc. 1, 6, 17).

## I. FACTUAL BACKGROUND

The Ohio Court of Appeals set forth the following set of facts leading to petitioner's convictions and sentence:[2]

{¶ 3} In May 2018, the trial court held a suppression hearing, and the following three individuals testified: Columbus Division of Police Officers Nathaniel Harp and David Schulz, and Vania Ramirez-Chavez. Their testimony related to the circumstances surrounding Officer Harp's opening of a closed Home Depot bucket during a search at the residence of Henize and Ramirez-Chavez on December 26,

---

[1] On May 27, 2022, counsel for petitioner filed a motion to withdraw as attorney, which was granted by the Court. (Docs. 7, 10).

[2] 28 U.S.C. § 2254(e)(1) provides that "[i]n a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed correct" unless petitioner rebuts the presumption by "clear and convincing evidence." Because petitioner has neither cited nor presented clear and convincing evidence to rebut the Ohio Court of Appeals' factual findings quoted herein, the state appellate court's factual findings are presumed to be correct. *See McAdoo v. Elo*, 365 F.3d 487, 493-94 (6th Cir. 2004).

2017.

{¶ 4} Officers Harp and Schulz both testified that, sometime during the first few hours of December 26, 2017, they were dispatched to 3894 Preserve Crossing Boulevard in Columbus based on a report of domestic violence. It was reported that the victim, later identified as Ramirez-Chavez, was being held at gunpoint by her boyfriend, later identified as Henize. When the officers arrived at the scene, Ramirez-Chavez's mother flagged them down and provided very similar information to what had been reported earlier. Officer Harp could see Ramirez-Chavez holding a young child at a third-floor window of the three story townhome-style apartment. The officers asked her to come down and talk to them. Ramirez-Chavez indicated that she could not comply with that request because Henize, who had a firearm, was holding her against her will.

{¶ 5} Officer Harp instructed other officers to position themselves for a possible barricade situation, and they started the process of evacuating the area. Approximately 20 minutes later, Henize came to the third story window and communicated with Officer Harp, who convinced Henize to exit the apartment. It took Henize longer than necessary to exit the apartment, but when he did, the officers arrested him. Once Henize was arrested, the officers cleared the apartment to make sure there were no other threats to their or the victim's safety. They began to interview Ramirez-Chavez on the second floor of the apartment. Ramirez-Chavez indicated to the officers that she resided with Henize at the apartment and further stated that Henize had held a gun to her head and threatened to kill her. The officers therefore were interested in recovering the weapon as part of their investigation of Henize's conduct.

{¶ 6} According to the officers' testimony, Ramirez-Chavez was asked if the officers could search for the firearm, and she consented to that search. She also indicated to the officers that the weapon that had been used was somewhere on the second floor of the apartment, which is where the kitchen was located. "She said that [the officers] could search whatever [they] needed to find the handgun." (May 7, 2018 Tr. at 38.) One of the officers discovered a rifle on top of a cabinet in the kitchen and displayed it to her. She indicated that the rifle was not the weapon Henize had used against her because he had used a much smaller firearm. As they continued the search for the weapon that had been held to her head, Officer Harp noticed an orange Home Depot bucket on the floor of the kitchen. The bucket, which had a lid, seemed out of place and was more than sufficient size to hold a handgun. Officer Harp opened the lid to reveal a handgun, drugs, and cash. Upon making this discovery, the officers halted the search and contacted their supervisor. Once a search warrant was obtained, Officer Harp assisted a narcotics detective in conducting a more thorough search of the apartment.

2

(Doc. 5, Ex. 12 at PageID 145-46).

## II.  PROCEDURAL HISTORY

### State Trial Proceedings

On March 2, 2018, the Franklin County, Ohio, grand jury returned a sixteen-count indictment charging petitioner with two counts of illegal manufacture of drugs, five counts of aggravated trafficking in drugs, three counts of aggravated possession of drugs, two counts of receiving proceeds of an offense subject to forfeiture proceedings, and one count each of improper handling firearms in a motor vehicle, trafficking in heroin, possession of heroin, and endangering children.  (Doc. 5, Ex. 1).   Petitioner entered a plea of not guilty.  (Doc. 5, Ex. 2).

Petitioner filed a motion to suppress.  (Doc. 5, Ex. 3).  Petitioner, through counsel, argued that the victim did not provide consent for the search.  (Doc. 5, Ex. 3, 5).  On June 27, 2018, after conducting a suppression hearing, the trial court overruled petitioner's motion to suppress.  (Doc. 5, Ex. 6).

Petitioner subsequently entered a no-contest plea.  (Doc. 5, Ex. 7).  On January 28, 2019 petitioner was sentenced to serve a total prison sentence of eighteen years in the Ohio Department of Rehabilitation and Correction.  (Doc. 5, Ex. 8).

### Direct Appeal

Petitioner, through new counsel, filed a notice of appeal to the Ohio Court of Appeals. (Doc. 5, Ex. 9).  In his appellate brief, petitioner raised the following single assignment of error:

ASSIGNMENT[] OF ERROR

Henize's motion to suppress should have been granted: Ramirez-Chaves had no apparent authority to allow the officers to open the Home Depot bucket without a warrant.

3

ISSUES PRESENTED FOR REVIEW

> Should the trial court's decision to deny Henize's motion to suppress be reversed, if Ramirez-Chavez had no apparent authority to allow the officers to open the Home Depot bucket without a warrant, yet they did so anyway?

(Doc. 5, Ex. 10 at PageID 104). On December 17, 2019, the Ohio Court of Appeals overruled petitioner's assignment of error and affirmed the judgment of the trial court. (Doc. 5, Ex. 12).

Petitioner did not appeal the decision to the Ohio Supreme Court.

**Application to Reopen**

On March 4, 2020, petitioner filed a pro se application to reopen his appeal pursuant to Ohio App. R. 26(B). Petitioner argued that his appellate counsel was ineffective for failing to raise the following three assignments of error on direct appeal:

1. Appellant's dual conviction and sentence for the same pill press violates the double jeopardy clauses of the United States and Ohio Constitutions.

2. It was prosecutorial misconduct for the State of Ohio to constructively amend the drug trafficking and possession offenses and/or an abuse of discretion for the trial court to find facts which increased the punishment beyond that contained in indictment.

3. Forfeiture of $28,415.00 is excessive in the face of convictions for six (6) fifth-degree felonies.

(Doc. 5, Ex. 13). On March 31, 2020, the Ohio Court of Appeals denied petitioner's application. (Doc. 5, Ex. 15).

Petitioner filed a motion for reconsideration on August 6, 2020. (Doc. 5, Ex. 16). Although petitioner labeled the filing as an "Application to Reconsider," petitioner claimed his appellate counsel was ineffective for failing to raise different claims than those in his original 26(B) Application. Petitioner argued that appellate counsel was ineffective for failing to

4

adequately challenge the suppression of evidence, search warrant, and the jurisdiction of police officers. (*See id.*). On September 3, 2020, the Ohio Court of Appeal denied the motion, finding that petitioner's attempt to raise new claims in the application was improper. (Doc. 5, Ex. 19).

On October 19, 2020, petitioner appealed the decision to the Ohio Supreme Court. (Doc. 5, Ex. 20). In his memorandum in support of jurisdiction, petitioner raised the following single proposition of law:

> A criminal defendant suffers ineffective assistance of appellate counsel where counsel failed to argue consent was never given, false statement by the search warrant affiant, defective search warrant and jurisdiction of municipal police officers responding outside their respective territory.

(Doc. 5, Ex. 21). Petitioner raised the same claims that were presented to the Court of Appeals in the application for reconsideration. (*See id.* at PageID 267-73). On December 15, 2020, the Ohio Supreme Court declined jurisdiction over the appeal. (Doc. 5, Ex. 23).

## Federal Habeas Corpus

On March 15, 2022, petitioner, through counsel, filed a federal habeas corpus petition in this Court. (Doc. 1). Petitioner raises the following four grounds for relief in the petition:

**GROUND ONE**: Appellate counsel rendered ineffective assistance.

Supporting Facts: Appellate counsel rendered ineffective assistance by failing to raise the issues asserted in the August 6, 2020 application, as noted above.

**GROUND TWO**: Henize's motion to suppress should have been granted because there was no consent for the search, as required under the Fourth Amendment.

Supporting Facts: When police were searching Henize's home, the victim of one of the alleged crimes claimed that the police could grab a gun on the premises. This consent did not expand to a search of a closed bucket in which the police found other contraband.

**GROUND THREE**: Henize's motion to suppress should have been granted because the search warrant that was eventually obtained was, in fact, flawed.

Supporting Facts: The search warrant obtained was flawed because the officer obtaining the warrant misrepresented the facts and tried to create exigent circumstances when, in fact, there were none.

**GROUND FOUR**: Henize's motion to suppress should have been granted because the warrant that was executed by police who lacked jurisdiction to do so.

Supporting Facts: Columbus Police executed the warrant even though the incident did not take place in Columbus, Ohio.

(Doc. 1 at PageID 5-11).

Respondent has filed a return of writ in opposition to the petition (Doc. 6), to which petitioner has replied (Doc. 17). According to respondent, petitioner's grounds for relief are time-barred, non-cognizable, and/or procedurally defaulted.[3]

## III. THE PETITION SHOULD BE DENIED.

In recognition of the equal obligation of the state courts to protect the constitutional rights of criminal defendants, and in order to prevent needless friction between the state and federal courts, a state defendant with federal constitutional claims must fairly present those claims to the

---

[3] Although the undersigned recommends that the petition be denied based on the procedural default and waiver of petitioner's grounds for relief, it does appear that the petition is also time-barred. Under 28 U.S.C. § 2244(d)(1)(A), petitioner's conviction became final on January 31, 2020, when the 45-day period expired for filing an appeal to the Ohio Supreme Court from the Ohio Court of Appeals' December 17, 2019 direct appeal decision. *See* Ohio Sup. Ct. Prac. R. 7.01(A)(1)(a)(1). The limitations period ran for thirty days before petitioner filed his March 4, 2020 application to reopen his appeal. *See* Ohio App . R. 26(B). The limitations period was tolled until the Ohio Supreme Court's December 15, 2020 decision declining jurisdiction over petitioner's appeal. (*See* Doc. 5, Ex. 23). The limitations period ran the remaining 335 days and expired on November 15, 2021. Petitioner did not file his habeas petition until March 15, 2022, four months later. Because the undersigned recommends that the petition be denied based on petitioner's procedural default and waiver of his grounds for relief, the Court need not determine whether equitable tolling principles impact the limitations period in this case.

state courts for consideration before raising them in a federal habeas corpus action. *See* 28 U.S.C. § 2254(b)(1), (c); *see also Anderson v. Harless,* 459 U.S. 4, 6 (1982) (per curiam); *Picard v. Connor,* 404 U.S. 270, 275–76 (1971). In order to satisfy the fair presentation requirement, the claims asserted in the federal habeas petition must be based on the same facts and same legal theories that were presented to the state courts. *Carter v. Mitchell*, 693 F.3d 555, 568 (6th Cir. 2012) (citing *Williams v. Anderson,* 460 F.3d 789, 806 (6th Cir. 2006); *Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998)). Moreover, a claim is deemed fairly presented only if the petitioner presented his constitutional claims for relief to the state's highest court for consideration. *See O'Sullivan v. Boerckel,* 526 U.S. 838, 845, 848 (1999); *Hafley v. Sowders,* 902 F.2d 480, 483 (6th Cir. 1990); *Leroy v. Marshall,* 757 F.2d 94, 97, 99-100 (6th Cir. 1985). If the petitioner fails to fairly present his constitutional claims through the requisite levels of state appellate review to the state's highest court, or commits some other procedural default that prevents a merit-based review of the federal claims by the state's highest court, he may have waived the claims for purposes of federal habeas review. *See O'Sullivan,* 526 U.S. at 847-48; *Harris v. Reed,* 489 U.S. 255, 260-62 (1989); *McBee v. Grant,* 763 F.2d 811, 813 (6th Cir. 1985); *see also Weaver v. Foltz,* 888 F.2d 1097, 1099 (6th Cir. 1989).

It is well-settled under the procedural default doctrine that the federal habeas court may be barred from considering an issue of federal law from a judgment of a state court if the judgment rests on a state-law ground that is both "independent" of the merits of the federal claim and an "adequate" basis for the state court's decision. *See Harris,* 489 U.S. at 260-62. The Supreme Court has stated:

In all cases in which a state prisoner has defaulted his federal claims in state court

7

> pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default, and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991).  Such a default may occur if the state prisoner files an untimely appeal, *Coleman*, 501 U.S. at 750, if he fails to present an issue to a state appellate court at his only opportunity to do so, *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994), or if he fails to comply with a state procedural rule that required him to have done something to preserve the issue for appellate review.  *United States v. Frady*, 456 U.S. 152, 167-69 (1982); *Simpson v. Sparkman*, 94 F.3d 199, 202 (6th Cir. 1996).

The Sixth Circuit employs a three-prong test, which was initially established in *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986), to determine if a claim is procedurally defaulted under the adequate and independent state ground doctrine:

> First, the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule. . . . Second, the court must decide whether the state courts actually enforced the state procedural sanction. . . .  Third, the court must decide whether the state procedural forfeiture is an "adequate and independent" state ground on which the state can rely to foreclose review of a federal constitutional claim.

*Hoffner v. Bradshaw*, 622 F.3d 487, 495 (6th Cir. 2010) (quoting *Jacobs v. Mohr,* 265 F.3d 407, 417 (6th Cir. 2001) (in turn quoting *Maupin*)); *see also Johnson v. Bradshaw*, 493 F. App'x 666, 669 (6th Cir. 2012).  Under *Maupin* and as discussed above, if the three prerequisites are met for finding a claim is procedurally defaulted under the adequate and independent state ground doctrine, federal habeas corpus review of the defaulted claim is precluded unless the petitioner can demonstrate cause for and prejudice from the procedural default or that failure to consider

8

the defaulted claim will result in a "fundamental miscarriage of justice." *Hoffner*, 622 F.3d at 495 (citing *Maupin*, 785 F.2d at 138); *Johnson,* 493 F. App'x at 669. *See also Coleman*, 501 U.S. at 750; *Harris,* 489 U.S. at 262; *Murray v. Carrier,* 477 U.S. 478, 485 (1986); *Engle v. Isaac,* 456 U.S. 107, 129 (1982); *Wainwright v. Sykes,* 433 U.S. 72, 87 (1977).

### A. Ground One

In Ground One of the petition, petitioner contends that his appellate counsel rendered ineffective assistance by failing to raise the issues asserted in his "August 6, 2020 application" on direct appeal.[4] (*See* Doc. 1 at PageID 6). As noted above, petitioner filed his application to reopen his appeal pursuant to Ohio App. R. 26(B) on March 4, 2020. Petitioner based his motion on appellate counsel's failure to raise three claims: (1) that petitioner's dual conviction and sentence subjected him to double jeopardy, (2) that constructive amendment of the indictment amounted to prosecutorial misconduct and an abuse of discretion on the part of the trial court, and (3) that he was subjected to excessive forfeiture. (*See* Doc. 5, Ex. 13). After the Ohio appeals court denied his application, petitioner filed a motion for reconsideration on August 6, 2020, arguing that appellate counsel was ineffective for failing to raise new claims, i.e., those asserted in Grounds Two through Four of the instant petition: that the consent provided by the

---

[4] On direct appeal appellate counsel did raise an assignment of error asserting that the trial court improperly denied the motion to suppress, on the theory that the victim did not have apparent authority to consent to the search of the Home Depot bucket. (*See* Doc. 5, Ex. 10). Petitioner in this case asserts that appellate counsel was ineffective for failing to argue that consent was never provided by the victim. (*See* Doc. 17 at PageID 486) ("Appellate counsel argued that Ramirez-Chavez did not have apparent authority to given consent on direct appeal. . . . Petitioner's argument was that police did not receive consent to enter the residence, and that police did not have consent to search the residence once illegally inside the residence."). *See also* Doc. 5, Ex. 18 at PageID 248 ("[Petitioner]'s original appellate counsel argued mutual use and apparent authority to give consent. Counsel did not argue that the consent was never given.")). During the suppression hearing, the victim testified that she was never asked for permission to conduct the search. In denying the motion to suppress, however, the trial court found the victim's testimony was not credible. (Doc. 5, Ex. 6 at PageID 82). In the instant petition, petitioner claims that appellate counsel was ineffective for failing to argue that the police did not receive consent from the victim, as asserted during the suppression hearing (*see* Doc. 5, Ex. 5) and raised as Ground Two of the petition.

9

victim was inadequate (Ground Two), the search warrant was defective (Ground Three), and the police executed the warrant outside of their jurisdiction (Ground Four).  (*See* Doc. 5, Ex. 16, 18). However, the Ohio Court of Appeals found petitioner's attempt to raise new arguments in a motion for reconsideration improper, did not consider the merits of the claims, and denied the reconsideration motion.  (*See* Doc. 5, Ex. 19).

Petitioner procedurally defaulted Ground One of the petition by failing to fairly present the claims to the Ohio Courts.  Although petitioner attempted to raise the claims in his application for reconsideration, as noted by the Ohio Court of Appeals in denying petitioner's application, under Ohio law "an application for reconsideration is not a means to raise new arguments or issues."  (Doc. 5, Ex. 19 at PageID 254).  *See State v. Wellington*, Case No. 14 MA 115, 2015 WL 3487120, at *2 (Ohio App. 7th Dist. May 28, 2015) ("An application for reconsideration is not a mechanism to raise an entirely new argument and issue to the appellate court that was not raised in the appellate brief.").  *See also E. Liverpool v. Columbiana Cty. Budget Comm.*, 876 N.E.2d 575, 575 (Ohio 2007) (finding new argument raised in a motion for reconsideration to be abandoned).  By failing to properly raise his ineffective assistance of appellate counsel claims in the Rule 26(B) proceedings, petitioner failed to fairly present the claims to the Ohio Court of Appeals.

Although petitioner raised the same claims to the Ohio Supreme Court on appeal from the Court of Appeals' denial of the motion for reconsideration, petitioner was unable to satisfy the "fair presentation" requirement at that late juncture because the Ohio Supreme Court lacked jurisdiction to consider the constitutional issue, which had not been properly raised in or considered by the intermediate appellate court.  *See* Ohio Const. art. IV, § 2(B)(2); *State v.*

10

*Jones,* 211 N.E.2d 198 (Ohio 1965); *see also Rigdon v. Ohio Adult Parole Authority,* No. 1:08-cv-716, 2010 WL 3910236, at *9 (S.D. Ohio July 7, 2010) (Wehrman, J.) (citing *Leroy,* 757 F.2d at 99; *Fornash v. Marshall,* 686 F.2d 1179, 1185 n.7 (6th Cir. 1982)), *adopted,* 2010 WL 3910230 (S.D. Ohio Oct. 4, 2010) (Dlott, J.); *Harsh v. Warden, Chillicothe Corr. Inst.,* No. 1:08-cv-433, 2009 WL 3378246, at *1, *9 n.8 (S.D. Ohio Oct. 15, 2009) (Beckwith, J.; Black, M.J.) (and cases cited therein).[5]  The Ohio Supreme Court's unexplained entry denying jurisdiction to hear petitioner's appeal must be presumed to rely on the same state procedural ground.  *See Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991).  *See also Abshear v. Moore*, 354 F. App'x 964, 970 (6th Cir. 2009); *Knuckles v. Brigano*, 70 F. App'x 830. 840 (6th Cir. 2003).

Because petitioner failed to provide the state's highest court with an opportunity to correct the alleged violations of his constitutional rights, he procedurally defaulted and has waived the ground for relief absent a showing of cause and prejudice for the default in the state courts, or that a fundamental miscarriage of justice will occur if the claim is not considered herein.  *See, e.g., Coleman,* 501 U.S. at 750; *Harris,* 489 U.S. at 262.  "'[C]ause' under the cause and prejudice test must be something external to the petitioner, something that cannot fairly be attributed to him[;] . . . some objective factor external to the defense [that] impeded . . .  efforts to comply with the State's procedural rule."  *Coleman*, 501 U.S. at 753 (quoting *Murray,* 477 U.S. at 488).  "Such factors may include interference by officials, an attorney error rising to the level

---

[5] *Cf. Mayes v. Hudson,* No. 1:07-cv-315, 2010 WL 55963, at *9 & n.1 (N.D. Ohio Jan. 4, 2010) (in holding that the petitioner's "failure to raise [a] ground for relief . . . in the state appellate court on direct appeal procedurally defaulted that claim," the district court noted: "Even if [the] memorandum in support of jurisdiction in the Ohio Supreme Court could be read as having raised the claim . . ., [the petitioner's] failure to raise that claim in the appellate court resulted in its default," because it must be assumed from the Ohio Supreme Court's silence as to the reasons for denying the claim that it did not "ignore its own procedural rules and . . . enforced the procedural bar" prohibiting review of claims that are "not raised in the underlying appellate proceeding") (citing *Simpson v. Sparkman,* 94 F.3d 199, 203 (6th Cir. 1996)).

of ineffective assistance of counsel, or a showing that a factual or legal basis for a claim was not previously available." *Wilson v. Hurley,* 382 F. App'x 471, 478 (6th Cir. 2010) (citing *McClesky v. Zant*, 499 U.S. 467, 493-94 (1991)).

As cause for his procedural default, petitioner argues that appellate counsel was ineffective for failing to provide petitioner with discovery materials.  (Doc. 17 at PageID 489).  According to petitioner, appellate counsel was not reachable until after the December 17, 2019 decision denying his direct appeal.  (Doc. 17 at PageID 461).  Petitioner does not indicate if and when he requested the discovery documents from appellate counsel but indicates that trial counsel provided him with the documents in June of 2020 prior to filing his application for reconsideration.  (Doc. 17 at PageID 513).

Ineffective assistance of appellate counsel can provide cause for a procedural default unless the ineffective assistance of appellate counsel claim is itself procedurally defaulted.  *See Murray,* 477 U.S. at 488-89.  *See also Edwards v. Carpenter*, 529 U.S. 446, 452 (2000); *Burroughs v. Makowski*, 411 F.3d 665, 668 (6th Cir. 2005).  In this case, petitioner has never presented his claim that appellate counsel was ineffective for failing to seek or provide petitioner with discovery documents to the Ohio courts.  Petitioner was undoubtedly aware of the fact that counsel failed to provide him with documents at the time he filed his March 4, 2020 application to reopen his appeal and August 6, 2020 application for reconsideration.  However, petitioner failed to raise his claim in either application or at any other point during the state court proceedings, much less demonstrate cause for his failure to do so.  Because petitioner's ineffective assistance of appellate counsel claim regarding discovery is itself procedurally

defaulted, it cannot serve as cause to excuse the procedural default of Ground One of the petition. *See Goldberg v. Maloney*, 692 F.3d 534, 538 n.3 (6th Cir. 2012).

Finally, petitioner has not demonstrated that a fundamental miscarriage of justice will occur if his procedurally-defaulted claims for relief are not considered or, in other words, that the alleged errors "probably resulted in the conviction of one who is actually innocent." *Murray,* 477 U.S. at 495–96. *See also Schlup v. Delo,* 513 U.S. 298, 327 (1995); *Bonilla,* 370 F.3d at 498. Accordingly, petitioner is not entitled to federal habeas relief based on Ground One of the petition.

### B.  Grounds Two through Four

In Grounds Two through Four petitioner challenges the search of his home and the trial court's failure to suppress the resulting evidence. In Ground Two he claims that the consent provided by the victim was inadequate. In Ground Three he claims the search warrant was defective. Finally, in Ground Four petitioner claims the police executed the warrant outside of their jurisdiction.

The Supreme Court held in *Stone v. Powell*, 428 U.S. 465 (1976), that federal habeas courts are prohibited from addressing the merits of Fourth Amendment claims brought by state prisoners if the prisoner had a full and fair opportunity to litigate such a claim in the state courts and the presentation of the claim was not thwarted by any failure of the State's corrective process. *Stone,* 428 U.S. at 494–95. The Sixth Circuit has developed a two-step inquiry to assess whether *Stone* applies to preclude federal habeas review of Fourth Amendment claims. *Riley v. Gray*, 674 F.2d 522, 526 (6th Cir. 1982); *see also Machacek v. Hofbauer,* 213 F.3d 947, 952 (6th Cir. 2000). Under that inquiry, the federal habeas corpus court must determine (1)

13

whether the State has provided a procedural mechanism through which, in the abstract, the petitioner could raise a Fourth Amendment claim, and (2) whether the petitioner's presentation of the Fourth Amendment claim was in fact frustrated because of a failure of that mechanism. *Id.*

In *Riley,* the Sixth Circuit held that by providing for the filing of a pretrial motion to suppress and the opportunity to directly appeal any ruling denying a suppression motion, Ohio has a mechanism in place for the resolution of Fourth Amendment claims, which "is, in the abstract, clearly adequate." *Riley,* 674 F.2d at 526; *see also Loza v. Mitchell,* 705 F. Supp. 2d 773, 860 (S.D. Ohio 2010). Therefore, the determination whether *Stone* applies turns solely on the resolution of the second *Riley* inquiry. *See Hillman v. Beightler*, No. 5:09-cv-2538, 2010 WL 2232635, at *5 (N.D. Ohio May 26, 2010).

Courts have consistently held that the "relevant inquiry" in resolving the second question posed in *Riley* is whether the "habeas petitioner had an opportunity to litigate his claims, not whether he in fact did so or even whether the Fourth Amendment claim was correctly decided" by the state courts. *Wynne v. Renico*, 279 F. Supp. 2d 866, 892 (E.D. Mich. 2003) (citing *Ortiz–Sandoval v. Gomez*, 81 F.3d 891, 899 (9th Cir. 1996)).[6]

> As long as a state prisoner has had an opportunity to litigate his Fourth Amendment claims by means of procedures that are "suitably crafted" to test for possible Fourth Amendment violations, a federal habeas court does not have the power, under *Stone,* to "second-guess the accuracy of the state courts' resolution of those claims." Thus, a "mistaken outcome" of a suppression hearing that has been conducted in a state trial court, standing alone, does not deny a habeas petitioner's opportunity to fully and fairly litigate his Fourth Amendment claims. . . . Thus, even "potentially

---

[6] The district court later supplemented its opinion in *Wynne* on another issue, which was determined to be sufficiently meritorious to justify the granting of a conditional writ of habeas corpus. *See Wynne v. Renico,* 595 F. Supp. 2d 775 (E.D. Mich. 2009). Thereafter, the Sixth Circuit reversed the district court's revised judgment granting habeas corpus relief based on that other ground. *Wynne v. Renico,* 606 F.3d 867 (6th Cir. 2010).

14

meritorious Fourth Amendment claims" are barred by *Stone* on habeas review if the petitioner had a full and fair opportunity to litigate his claims in the state courts.

*Id.* (quoting *Sanna v. Dipaolo,* 265 F.3d 1, 8–9 (1st Cir. 2001), and *Deputy v. Taylor,* 19 F.3d 1485, 1491 (3rd Cir. 1994)); *see also Hillman*, 2010 WL 2232635, at *5 (quoting *Cabrera v. Hinsley,* 324 F.3d 527, 531–32 (7th Cir. 2003)) ("Absent a subversion of the hearing process, we will not examine whether the judge got the decision right. . . . '[F]ull and fair' guarantees the right to present one's case, but it does not guarantee a correct result."); *Brown v. Berghuis,* 638 F. Supp. 2d 795, 812 (E.D. Mich. 2009) (and cases cited therein) ("Under *Stone,* . . . the correctness of the state courts' conclusions is simply irrelevant.").

The Sixth Circuit has stated that the second *Riley* inquiry is "not meant to be a case by case review of state court determinations," but rather "is a review of whether the state provided an adequate mechanism to address Petitioner's Fourth Amendment claims." *Abdul–Mateen v. Hofbauer,* No. 98–2323, 2000 WL 687653, at *3 (6th Cir. May 19, 2000). In *Abdul–Mateen,* the court recognized that an exception was carved out in *Riley* for "egregious error in the application of [F]ourth [A]mendment principles" amounting to a refusal by the state courts to consider or apply controlling Supreme Court precedents. *See id.* (quoting *Riley,* 674 F.2d at 526, in turn citing *Gamble v. Oklahoma,* 583 F.2d 1161 (10th Cir. 1978)). In *Riley,* the Sixth Circuit explained that when an "egregious error" of such "magnitude and nature" is present, as it was in *Gamble,* "a federal habeas court *might* be justified in concluding that an opportunity for a full and fair hearing had not been afforded the petitioner." *Riley,* 674 F.2d at 526 (emphasis added). In a subsequent decision, the Sixth Circuit rejected a petitioner's argument that an egregious misapplication of a controlling Supreme Court precedent also could justify such a conclusion.

15

*Gilbert v. Parke,* 763 F.2d 821, 824 (6th Cir. 1985). The court reasoned: "This court in *Riley*

declined to adopt the portion of *Gamble* permitting federal review of egregious substantive errors

committed by state courts on Fourth Amendment claims. . . . Since the [state] courts provided

Gilbert a full and fair opportunity to litigate his Fourth Amendment claims, second-guessing the

[state] Supreme Court on the merits would be inconsistent with *Stone.*" *Id.*

Here, as in *Gilbert,* the record does not reflect the magnitude or type of "egregious error"

referred to in *Riley* as possibly justifying a finding that the opportunity for a full and fair hearing

was thwarted. *Cf. Bergholz v. McMackin,* No. 89–3740, 1990 WL 223036, at *3 (6th Cir. Dec.

27, 1990) (per curiam) (in ruling that *Stone* foreclosed the petitioner's Fourth Amendment claim,

the Sixth Circuit pointed out that "even if the state courts were in error in applying substantive

law regarding 'seizures' under the Fourth Amendment, the state courts did not refuse to follow

applicable precedent"). To the contrary, it appears clear from the record that petitioner was able

to fully and fairly litigate his Fourth Amendment claims in the state courts.

Petitioner was permitted to raise his Fourth Amendment claims to the trial court through

a motion to suppress, and the trial court held a hearing on the matter. (*See* Doc. 5, Ex. 3, 6; *see

also* Doc. 5-2, Trans. of Supp. Hearing). Moreover, petitioner was able to challenge the trial

court's ruling on direct appeal to the Ohio Court of Appeals, which denied petitioner's claims on

the merits. (*See* Doc. 5, Ex. 10, 12; *see also supra* n.4). The Ohio trial and appeals courts

carefully considered petitioner's arguments and the applicable precedents in overruling the

motion to suppress and affirming the trial court's ruling. (*See* Doc. 5, Ex. 6, 12).

16

Accordingly, the Court concludes that Grounds Two through Four of the petition, challenging the search and seizure of evidence under the Fourth Amendment, are barred from review under the Supreme Court's *Stone* decision.

In any event, petitioner procedurally defaulted the claims asserted in Grounds Two through Four by failing to fairly present the claims to the Ohio courts. Petitioner failed to raise these claims on direct appeal or on further review to the Ohio Supreme Court. As noted above, in order to fairly present his claims to the state courts, petitioner must have raised his constitutional claims for relief to the state's highest court. *See O'Sullivan,* 526 U.S. at 845, 848; *Hafley,* 902 F.2d at 483; *Leroy,* 757 F.2d at 97, 99-100. Petitioner's failure to present his claims to the Ohio Supreme Court resulted in the procedural default of the claims asserted in Grounds Two through Four. *See Leroy,* 757 F.2d at 97 (failure to raise a claim on direct appeal in the Ohio Court of Appeals or in the Ohio Supreme Court constitutes a procedural default).

Because petitioner failed to fairly present his claims to the Ohio Supreme Court, he procedurally defaulted and waived the ground for relief absent a showing of cause and prejudice for the default in the state courts, or that a fundamental miscarriage of justice will occur if the claim is not considered herein. *See, e.g., Coleman,* 501 U.S. at 750; *Harris,* 489 U.S. at 262. No such showing has been made in this case.

Although petitioner contends in Ground One that his appellate counsel was ineffective for failing to raise Grounds Two through Four on direct appeal, petitioner's ineffective assistance of counsel claim does not serve as cause in this case. As discussed above, petitioner procedurally defaulted and waived his ineffective assistance of counsel claim by failing to properly raise the claim in the Ohio Court of Appeals and for failure to fairly present the claim to the Ohio

17

Supreme Court.  Because the claim is itself defaulted and waived, petitioner may not rely on his ineffective assistance of appellate counsel claim as cause to excuse the procedural default of Grounds Two through Four.  *See Murray,* 477 U.S. at 488-89.  *See also Edwards*, 529 U.S. at 452; *Burroughs*, 411 F.3d at 668.

Petitioner is not entitled to federal habeas relief based on Grounds Two through Four of the petition.

## IT IS THEREFORE RECOMMENDED THAT:

1.  The petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. 1) be **DENIED** with prejudice.

2.  A certificate of appealability should not issue with respect to the claims alleged in the petition, which this Court has concluded are waived and thus procedurally barred from review, because under the first prong of the applicable two-part standard enunciated in *Slack v. McDaniel,* 529 U.S. 473, 484–85 (2000), "jurists of reason" would not find it debatable whether this Court is correct in its procedural ruling.[7]

3.  With respect to any application by petitioner to proceed on appeal *in forma pauperis,* the Court should certify pursuant to 28 U.S.C. § 1915(a)(3) that an appeal of any Order adopting this Report and Recommendation would not be taken in "good faith," and therefore **DENY** petitioner leave to appeal *in forma pauperis* upon a showing of financial necessity.  *See* Fed. R. App. P. 24(a); *Kincade v. Sparkman,* 117 F.3d 949, 952 (6th Cir. 1997).

---

[7] Because this Court finds that the first prong of the *Slack* standard has not been met in this case, it need not address the second prong of *Slack* as to whether or not "jurists of reason" would find it debatable whether petitioner has stated a viable constitutional claim in any of his grounds for relief.  *See Slack*, 529 U.S. at 484.

18

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations.   This period may be extended further by the Court on timely motion for an extension.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

Date: 9/27/2023

Karen L. Litkovitz
United States Magistrate Judge

19